#30253-a-SRJ
**2023 S.D. 64**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

DONITA K. WEBER,                                    Plaintiff and Appellee,

v.

IVAN R. WEBER,                                      Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
DAVISON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE PATRICK T. SMITH
Judge

* * * *

DAVA A. WERMERS
Mitchell, South Dakota                              Attorney for defendant
                                                    and appellant.


ROSE ANN WENDELL
Pierre, South Dakota                                Attorney for plaintiff and
                                                    appellee.

* * * *

CONSIDERED ON BRIEFS
NOVEMBER 7, 2023
OPINION FILED **12/6/23**

#30253

JENSEN, Chief Justice

[¶1.]        Ivan and Donita Weber were married in 2019 and divorced less than four years later.  Prior to marrying Ivan, Donita owned farmland having a substantial value.  During the marriage, the parties co-mingled and jointly titled most of their assets, including the farmland.  Ivan and Donita worked on and made improvements to the farm before selling it and most of the accompanying assets for roughly $2.5 million.  Donita filed for divorce in May 2022.  At the conclusion of the divorce trial, the circuit court treated most of the parties' property as marital but awarded Donita a much larger share.  The circuit court did not order or discuss either party's need for spousal support because neither party sought it.  Ivan appeals arguing that the circuit court abused its discretion in dividing the marital assets and in failing to award him spousal support.  We affirm.

## Factual and Procedural Background

[¶2.]        Donita and Ivan Weber met in October 2016, after Donita's son invited Ivan to hunt on their family farm.  At the time, Donita lived on the farm in Hyde County and was recently widowed after her first husband, Elroy, had died from cancer.  Ivan lived in Rapid City and worked as a welder and truck driver.  Ivan was married but divorced in 2018.

[¶3.]        Donita and Ivan began dating in 2018.  Shortly thereafter, Ivan moved to Donita's farm in Hyde County.  They were married on February 12, 2019.  Prior to their marriage, Ivan owned approximately $90,000 in assets including a mobile home and a small welding shop in Meade County.  The mobile home and welding shop were sold and converted into cash shortly before Ivan and Donita married.

Donita owned considerable assets before the marriage, including her family farm estimated to be worth nearly $2 million.

[¶4.]		Donita testified that she worked on the farm daily and assisted Ivan while he was learning the operations of the farming business. Prior to their marriage, Donita built a new house on the farm which became the couple's main residence. Donita also brought most of the machinery, property, and cattle into the marriage.

[¶5.]		Ivan also worked on the family farm during the marriage. His labors included working cattle, moving bales, and building a 50x80 foot shop. He replaced flooring, installed a sump pump, and completed landscaping projects on the main residence. He also updated an old house on the farm by installing a water heater, sump pump, and added new exterior steps. In addition, he made several repairs to a barn located on the farm and continued his welding business. The welding business made minimal income during the marriage.

[¶6.]		In addition to their farming activities, Donita and Ivan bought and sold cattle, and produced calves each year from a herd of stock cattle. Over the course of their marriage, they sold 272 head of cattle for a total of $276,919.43 and deposited most of the receipts from these sales into the couple's joint banking and investment accounts. The remaining funds were used to purchase a motorhome.[1]

---

1.	The circuit court expressed concerns with the purchase of the motorhome. The court found that Ivan had purchased the motorhome to "assist a friend" who was going through a divorce by paying a portion of the purchase price by check and the rest in cash to minimize the apparent value of the motorhome.

[¶7.] Donita and Ivan titled most of their assets jointly, including several bank accounts and the family farm. However, Donita kept two quarters of land that she inherited from her father in her own name. Ivan did not contribute to this property, and it was kept separate throughout the entirety of their marriage.

[¶8.] Although Donita had not planned to sell the family farm, the couple began discussing the option of selling farm assets to set them up for an early retirement. Ivan and Donita initially sold most of their farm-related personal property at auction. The proceeds from the auction totaled $327,139. They subsequently held a land auction, selling all the jointly owned real property, which they held in a revocable trust. The net proceeds from the land auction totaled $2,222,581.25. The proceeds from both auctions were deposited into jointly held bank accounts. As a result of the auction sales, Ivan and Donita incurred a capital gains tax liability of approximately $200,000.

[¶9.] After the sale of their assets, Donita and Ivan began traveling. They also purchased real property in Mitchell for $130,000 and a home and a double-wide trailer in Watertown. Ivan and Donita stipulated that the value of the home and double-wide trailer in Watertown was $320,000. The parties also retained 40 acres of land in Hyde County.

[¶10.] Donita began expressing concerns about Ivan's spending habits. Ivan also conveyed disapproval to Donita when she made two loans to her children which totaled $46,000. Due to their disagreements, along with an emerging rift between Ivan and Donita's children, Donita and Ivan separated in May 2022.

[¶11.]     After their separation, Donita removed funds from their jointly held bank accounts and transferred the funds into accounts held solely in her name.  She also filed for divorce, claiming irreconcilable differences.  During the pendency of their divorce proceedings, the circuit court ordered Donita to pay Ivan $100,000 as an interim property division settlement, subject to further reallocation at the resolution of the case.[2]

[¶12.]     At the time of trial, Donita was 57 years old and Ivan was 55.  Neither party was working, and the court found both to be in relatively good health.  However, the court noted that Ivan had recently undergone multiple surgeries to address pain in his elbows and knee.  Ivan also testified that the day before trial he fell and tore a tendon in his knee and required urgent medical care.  The extent of this injury, and whether it might impact his future employability, was unknown.  Ivan testified that he expected to be able to return to work as a truck driver or welder at some point.  He also testified that he planned to develop the Mitchell property into retail stores and storage buildings.  Donita testified that once the divorce was finalized, she intended to open a retail store in Watertown.

[¶13.]     Following the trial, the circuit court issued a memorandum decision, findings of fact and conclusions of law, and a judgment and decree of divorce on December 29, 2022.  The court treated all the assets owned by the parties as marital property, except for the farmland Donita inherited from her father.  The court

2.    Prior to receiving this payment, Ivan also received $35,000 from Donita to purchase a skid steer loader.  However, Ivan did not purchase the skid steer and claimed he used the $35,000 to cover his living expenses while the divorce was pending.

divided the marital property so that Donita received most of the assets and all the parties' debt. The total assets Donita received were valued at $2,326,771, less the debt of $240,000. This debt included the total capital gains tax liability of $200,000. Ivan received assets with a value of $391,856.[3] The circuit court also ordered Donita to make an equalization payment of $300,000 to Ivan.

[¶14.]     Ivan appeals and raises the following issues:

1.     Whether the circuit court abused its discretion in its division of property.

2.     Whether the circuit court abused its discretion in declining to award Ivan spousal support.

## Standard of Review

[¶15.]     This Court reviews a circuit court's determinations of the division of property and spousal support under an abuse of discretion standard. *Taylor v. Taylor*, 2019 S.D. 27, ¶ 14, 928 N.W.2d 458, 465 (quoting *Hill v. Hill*, 2009 S.D. 18, ¶ 5, 763 N.W.2d 818, 822). "Abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Id.* (quoting *Godfrey v. Godfrey*, 2005 S.D. 101, ¶ 11, 705 N.W.2d 77, 80). "An abuse of discretion 'is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable.'" *Id.* (quoting *Thurman v. CUNA Mut. Ins. Soc'y*, 2013 S.D. 63, ¶ 11, 836 N.W.2d 611, 616).

---

3.     The court treated the $100,000 interim property division payment made by Donita as a part of the $391,856 of marital property that Ivan received.

## Analysis

### 1. *Division of property.*

[¶16.] "South Dakota is an 'all property state,' meaning all property of the 'divorcing parties is subject to equitable division by the circuit court, regardless of title or origin.'" *Ahrendt v. Chamberlain*, 2018 S.D. 31, ¶ 10, 910 N.W.2d 913, 918 (quoting *Halbersma v. Halbersma*, 2009 S.D. 98, ¶ 9, 775 N.W.2d 210, 214). "Before dividing property, the court must classify it as marital or nonmarital." *Id.* ¶ 8. (citing *Nickles v. Nickles*, 2015 S.D. 40, ¶ 32, 865 N.W.2d 142, 153). "The court should consider the following factors when classifying and dividing property: (1) the duration of the marriage; (2) the value of the property owned by the parties; (3) the ages of the parties; (4) the health of the parties; (5) the competency of the parties to earn a living; (6) the contribution of each party to the accumulation of the property; and (7) the income-producing capacity of the parties' assets." *Dunham v. Sabers*, 2022 S.D. 65, ¶ 40, 981 N.W.2d 620, 637 (quoting *Ahrendt*, 2018 S.D. 31, ¶ 10, 910 N.W.2d at 918). A circuit court has broad discretion in classifying the property; however, "[o]nly where one spouse has made no or de minimis contributions to the acquisition or maintenance of an item of property and has no need for support[ ] should a court set it aside as [nonmarital] property." *Ahrendt*, 2018 S.D. 31, ¶ 10, 910 N.W.2d at 918) (second and third alterations in original) (quoting *Anderson v. Anderson*, 2015 S.D. 28, ¶ 6, 864 N.W.2d 10, 14).

[¶17.] "When a divorce is granted, the courts may make an equitable division of the property belonging to either or both, whether the title to such property is in the name of the husband or the wife." SDCL 25-4-44. "In making such division of

the property, the court shall have regard for equity and the circumstances of the parties." *Id.* "A trial court's division of property is not bound by any mathematical formula." *Endres v. Endres*, 532 N.W.2d 65, 71 (S.D. 1995) (citing *Korzan v. Korzan*, 488 N.W.2d 689, 693 (S.D. 1992)).

[¶18.]     Ivan asserts that the circuit court abused its discretion when dividing the marital property because it failed to consider several relevant factors. Ivan argues that he made significant contributions to the marital property, and although he did not assist in acquiring most of the property, he was instrumental in increasing its value. Ivan also claims that his poor health and lack of education severely limit his future ability to earn an income. He argues that the accumulation of these factors required the court to award him a greater share in the marital estate. He further argues that the circuit court did not provide sufficient findings or provide adequate reasoning for its property division and asserts that "[a]ssigning an arbitrary amount without rationale is [an] abuse of discretion[.]"

[¶19.]     Donita responds that the circuit court properly considered the relevant factors before dividing their marital property. She argues that the short length of their marriage and their disproportionate contributions to the accumulation of property are the two critical factors that particularly support the circuit court's property division. Donita acknowledges that Ivan made some contribution to the property's increased value, but argues he had no role in acquiring most of the property. Donita also claims that Ivan's contributions to the farm are overstated because they added minimal value to the property and market appreciation was the most significant factor in the farm's increased value. Donita also maintains that

Ivan's excessive spending was more harmful than any of the contributions he made to the marital property.

[¶20.] In awarding a larger share of the marital estate to Donita, the circuit court found that Donita owned most of the property prior to marrying Ivan. The court also categorized Donita and Ivan's less than four-year marriage as a "short marriage." It further found that Donita and Ivan were of similar age and health, and therefore found neither of these factors to weigh in favor of either party. Additionally, the court found that Ivan had a greater earning capacity due to his experience as a welder.

[¶21.] The court's findings are supported by the record, and when considering these factors together, the court appropriately exercised its discretion in determining that Donita was entitled to a significantly greater share of the marital estate. Ivan's contention that the court did not adequately consider his contributions to the marital property overlooks the court's specific findings noting Ivan's contributions to the marital property during the marriage. Further, his contributions and any market appreciation during the four-year marriage, as well as the $90,000 Ivan brought into the marriage, are noticeably modest relative to the over $2 million in assets that Donita brought into the marriage.

[¶22.] Ivan also argues that the court's failure to provide a calculation for how it determined to award a significant disparity of property to Donita in its property division was an abuse of discretion. However, "[a] trial court's division of property is not bound by any mathematical formula." *Endres*, 532 N.W.2d at 71 (citing *Korzan*, 488 N.W.2d at 693). Moreover, "[t]he law requires an *equitable*, not

necessarily *equal*, division of assets." *Halbersma*, 2009 S.D. 98, ¶ 7, 775 N.W.2d at 214. *See also MacKaben v. MacKaben*, 2015 S.D. 86, ¶ 33, 871 N.W.2d 617, 628–29. In considering the relevant factors, the court reasoned that an equal division of property would be inequitable because it would entitle Ivan to $850,000 in equalization payments. Instead, the court awarded Ivan an equalization payment of $300,000, in addition to the more than $391,856 in marital assets Ivan was awarded. The court's decision is supported by the record, and we cannot say the circuit court abused its discretion in dividing the marital property.

### 2. *Spousal support.*

[¶23.] Donita asks this Court to not consider Ivan's spousal support arguments because he failed to request spousal support or present any evidence regarding this issue to the circuit court. Ivan responds that he sufficiently preserved the issue of spousal support at trial. He argues that he offered testimony concerning his need for spousal support by discussing his current health concerns and their impact on his ability to earn future wages. Additionally, he argues that he did not propose findings of fact and conclusions of law relating to spousal support because the need only arose once the court's property division left him with less assets than what could support his daily needs.

[¶24.] A party's failure to argue an issue to the circuit court waives their ability to argue it on appeal. *In re M.S.*, 2014 S.D. 17, ¶ 17 n.4, 845 N.W.2d 366, 371 n.4 (quoting *In re Estate of Smid*, 2008 S.D. 82, ¶ 43 n.15, 756 N.W.2d 1, 15 n.15 (Konenkamp, J., dissenting)). Furthermore, "[i]t is well established that 'we will not review a matter on appeal unless proper objection was made before the

circuit court.'" *Osdoba v. Kelly-Osdoba*, 2018 S.D. 43, ¶ 23, 913 N.W.2d 496, 503 (quoting *Halbersma*, 2009 S.D. 98, ¶ 29, 775 N.W.2d at 219). "An objection must be sufficiently specific to put the circuit court on notice of the alleged error so it has the opportunity to correct it." *Id.* (quoting *Halbersma*, 2009 S.D. 98, ¶ 29, 775 N.W.2d at 220).

[¶25.]    Although Ivan's initial answer and counterclaim raised the issue of spousal support, at the start of trial, Ivan's attorney affirmatively relinquished any issue except the division of property by stating that "the parties are agreeing to irreconcilable differences for the grounds for the divorce, so then I believe the only issue here is going to be property division." A review of the record shows that Ivan did not request spousal support or present any specific testimony relating to this issue. Additionally, Ivan's proposed findings of fact and conclusions of law did not address spousal support and once the court entered its findings of fact and conclusions of law, Ivan did not object to the absence of any findings relating to spousal support. Thus, Ivan wholly failed to present any issue concerning spousal support to the circuit court and has waived any such claim for review on appeal.

[¶26.]    Finally, both Ivan and Donita move for appellate attorney fees pursuant to SDCL 15-26A-87.3 and SDCL 15-30-6. Given this Court's disposition of the case, we decline to award Ivan any attorney fees and award $5,000 in appellate attorney fees to Donita.

## Conclusion

[¶27.]    The circuit court did not abuse its discretion when making its property division and equalization determination. Therefore, we affirm.

#30253

[¶28.]     KERN, SALTER, DEVANEY, and MYREN, Justices, concur.